## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) J. MCCONNELL, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.   13-cv-329-GKF-TLW |
| | ) | |
| (1) PREFERRED BUSINESS SYSTEMS, LLC., | ) | **JURY TRIAL DEMANDED** |
| An Oklahoma Limited Liability Company, | ) | **ATTORNEYS' LIEN CLAIMED** |
| | ) | |
| Defendant. | ) | |

### COMPLAINT

Plaintiff J. McConnell, for her causes of action against Defendant Preferred Business Systems, Inc., an Oklahoma corporation, alleges and states as follows:

### PRELIMINARY STATEMENT

1.    This is an action for employment discrimination on the basis of sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). This is further a claim for unpaid wages in the form of commissions, made under applicable Oklahoma law.

### PARTIES, JURISDICTION, AND VENUE

2.    Ms. McConnell, a female individual, is a resident of Tulsa County, State of Oklahoma. At all relevant times herein, Ms. McConnell was an employee of the Defendant within the meaning of applicable law.

3.    Defendant Preferred Business Systems, LLC, is an Oklahoma limited liability company doing business in the State of Oklahoma and in Tulsa County.  At all relevant times herein, Defendant was Ms. McConnell's employer within the meaning of applicable law.

4.     The events giving rise to this Petition took place largely within Tulsa County. Accordingly, jurisdiction and venue are proper in this Court.

5.     Ms. McConnell timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").   She complained to the EEOC about discrimination on the basis of sex (sexual harassment) and retaliation.  A Notice of Right to Sue letter was received by Ms. McConnell, issued on March 11, 2013.  This action was filed within ninety (90) days thereof and is therefore timely.  Ms. McConnell has fully complied with all prerequisites in this Court under applicable law.

## BACKGROUND ALLEGATIONS

6.     Defendant is in the business of selling office equipment, services, and supplies in the Oklahoma and Arkansas area.  Ms. McConnell was hired by Defendant in March 2012 as a Solutions Consultant.  She was to receive a salary, as well as commission for sales made to area companies and entities, and other financial rewards offered directly by affiliated companies facilitated by Defendant.  She was directly supervised by two individuals, Derek Schneider and Alan Balcourt.  Due to the nature of her job (i.e., outside sales), Ms. McConnell was only in the home office of Defendant for approximately two (2) hours per day.

7.     Almost immediately after commencing her job, Ms. McConnell was subject to continual harassment from one of her supervisors, Mr. Schneider, who for months made grossly inappropriate comments about Ms. McConnell's breasts, looks, weight, and sexuality in the presence of other employees and potential customers, as well as privately.  Her other supervisor, Mr. Balcourt, likewise engaged in grossly inappropriate and pervasive conduct of a sexual nature, although not about Ms. McConnell directly.  In short, Ms. McConnell endured constant comments of a sexual nature that were wholly improper for the workplace.  Ms. McConnell did

not participate in any sexual banter and made her discomfort known by expressing discomfort, changing the subject, and not responding to such comments.

8.     These two harassers were Ms. McConnell's only direct supervisors.  When she attempted to report the conduct of one to the other, she was instructed not to proceed further up the chain of command with her concerns.  As Ms. McConnell is a single mother, she felt she had no choice but to follow these instructions and not further report the misconduct.  This was further exacerbated by the fact that Ms. McConnell, who was on the sales team, was not frequently in the home office and was rarely, if ever, there without Mr. Schneider or Mr. Balcourt present.

9.     The misconduct of Mr. Schneider included the following incidents:

a.     Throughout March and April, and into the beginning of May, constant comments of a sexual nature *about Ms. McConnell* were made to her, including comments on her breasts, looks, weight, etc.

b.     In mid-April, Mr. Schneider texted Ms. McConnell a picture of his penis.

c.     In late April, Mr. Schneider texted Ms. McConnell that he needed 'a hug, a mouth hug."

d.     In early May, 2012, in front of a mutual friend and potential client, the potential client commented to Mr. Schneider in reference to Ms. McConnell's good work "you know how lucky you are to have her on your sales team, right?" Mr. Schneider responded: "Are you kidding me? That face... that rack... that's exactly why I hired her."

10.    Ms. McConnell informed Mr. Balcourt that she was continually uncomfortable and bothered by the harassment she experienced from Mr. Schneider.  Mr. Balcourt instructed Ms. McConnell not to proceed further with her complaints and asked her to allow him to handle Mr. Schneider.

11.     After the May 2012 incident with the potential client, who angrily informed Mr.

Schneider how inappropriate his conduct was, Mr. Schneider stopped his comments to Ms.

McConnell about her directly, but continued to make comments about the sexual attractiveness

of other individuals, particularly about body parts of women that he and Ms. McConnell would

see while out on sales calls.  Mr. Schneider continued to do so despite Ms. McConnell

expressing her discomfort and refusing to participate in such commenting.  The devastating

nature of this harassment was exacerbated because Ms. McConnell, who is overweight, was

being constantly compared to other women in terms of sexual attractiveness by her supervisor,

who also made comments about overweight individuals and how they were not attractive.  This

harassment continued until Ms. McConnell was terminated.

12.     Mr. Balcourt likewise engaged in sexually harassing conduct, commencing in late

April 2012.  At that time, during a dinner meeting with a prospective client, Mr. Balcourt began

discussing masturbation.  Ms. McConnell made it apparent several times that this made her very

uncomfortable, and eventually left the dinner.  The next day, the same customer asked Mr.

Balcourt, during a meeting after a tour of the customer's facility, whether Mr. Balcourt brought

his Hummer vehicle.  Mr. Balcourt responded "I brought the Hummer – and I'm not talking

about my hummer."  This lewd remark, made while gesturing at his genitals, caused two other

women to walk out of the meeting.  It further caused the relationship with the prospective client

to deteriorate.  But for Mr. Balcourt's conduct, the prospective client would have purchased a

significant amount of equipment during the spring/summer of 2012, resulting in tens of

thousands of dollars in commissions to Ms. McConnell.

13.     Ms. McConnell reported Mr. Balcourt's conduct to Mr. Schneider, who she

believed would take the problem seriously because of the destruction of the prospective client

4

relationship that Mr. Balcourt caused.  Mr. Schneider instructed Ms. McConnell not to proceed further with her concerns and complaints.

14.     At one point, Ms. McConnell confronted Mr. Balcourt about all of these issues related to the harassment she was enduring, and he said menacingly to her: "Be very careful what you say."  When Ms. McConnell did not respond, Mr. Balcourt continued "You look like you have a problem with that."  It was thus made very clear to Ms. McConnell that she was not to report to anyone the harassment, unless she wished to suffer repercussions.

15.     Mr. Balcourt's comments of a sexual and inappropriate nature continued.  For instance, during July of 2012, during a staff meeting in the presence of Ms. McConnell and other employees, Mr. Balcourt made numerous comments of a sexual nature.  He was apparently complimented by a male co-worker who told Mr. Balcourt "your shoulders are looking good, man."  Mr. Balcourt responded "that's thanks to my wife," and accompanied that respond with motions to indicate how his wife's legs were on his shoulders during intercourse.  Similarly, Mr. Balcourt (also in July 2012) was told by a co-worker and in Ms. McConnell's presence, "your beard sure is getting bushier."  Mr. Balcourt responded that he'd been using a "special cream," with other references and motions to indicate he was referring to oral sex.

16.     Upon information and belief, Mr. Schneider and Mr. Balcourt expressed concern to one another that Ms. McConnell would proceed further up the chain of command with her complaints about their conduct, particularly as the summer proceeded and it became clear that Mr. Balcourt's sexually harassing comments had caused irreparable damage to the prospective client relationship that would have been lucrative to Ms. McConnell.  Mr. Balcourt and Mr. Schneider privately in emails deemed Ms. McConnell to be insubordinate when she did report problems with her working environment and with clients to anyone other than the two of them.

17.     Due to the pervasive and public nature of the harassment Ms. McConnell endured, and due to her reports, Defendant was aware of the harassment but failed to take any remedial measures.

18.     On August 2, 2012 Ms. McConnell was terminated from employment at Defendant Preferred Business Systems by Mr. Schneider.  This was the first day that she was back from a short vacation.  She had attempted to log-in to her email account, but received a notification that her password changed.  She was told by Mr. Schneider that the server was down.  She was then called into Mr. Schneider's office and told "I'm not going to bull____ you. I've never bull_____ you.  I liked you a lot personally, but professionally it's a bad marriage. Today will be your last day.  This is my decision.  We are letting you go."

19.     Ms. McConnell responded initially with shock because there was no legitimate reason for there to be any termination as she was ahead in her revenue sales projections both for the quarter and the year, and commented "clearly this isn't a performance issue."

20.     Mr. Schneider repeated: "it's my decision."

21.     Ms. McConnell at that time stated that this action and Mr. Schneider's decision constituted wrongful termination and asked to speak with Human Resources.  Mr. Schneider responded that Ms. McConnell could call and make an appointment.  She also inquired why no one with the Human Resources department was present during her termination and asked that a representative be present immediately.  This request was also denied.

22.     As she left the building, Ms. McConnell spoke with Darlene Wolfinberger, an owner of the company, by going directly to her office.  Mr. Schneider attempted to stop this meeting, but Ms. McConnell was able to tell Ms. Wolfinberger that she had experienced horrific harassment while employed by Defendant.  ***Ms. Wolfinberger was not aware that Ms.***

*McConnell was being terminated.*  Despite this report, no attempts were made by Defendant to stop Ms. McConnell's wrongful termination.  Even had attempts been made, Ms. McConnell would not have felt safe continuing in the employ of Defendant due to the pervasive nature of the harassment she endured and would have been forced to resign.

23.     Several days later, Ms. McConnell was told that Mr. Schneider had been demoted and required to attend counseling in Dallas during weekends.

24.     After her termination, Ms. McConnell made demands for commissions and access to funds that she was owed related to work that she performed prior to her termination.  These commissions remain unpaid and are as follows:

a.     Ms. McConnell is owed $350.00 through the Sharp® Rewards program, which are paid directly from the company Sharp® but because Defendant cancelled her email address without warning, even prior to her unlawful termination, Ms. McConnell has been unable to redeem this amount.  Defendant has failed to facilitate Ms. McConnell's ability to redeem these monetary funds despite demand.  These funds are related to the sale of a machine to Irons Law Firm (serial number MX-M363N) and two machines to First Baptist Church of Wagoner (serial numbers MX-5111N and MX-283N).

b.     Ms. McConnell is owed $283.00 from a sale to Laredo Petroleum of a machine with the serial number MX-5110N.  *This sale dates back to May 2012, and Ms. McConnell brought this problem to the attention of Defendant numerous times while still employed.*

c.     Ms. McConnell is owed $1,334.00 from a sale to Stainless Tubular Products of a machine with the serial number MX-623N.

d.      Ms. McConnell is owed commissions on the sales outlined in sub-paragraph (a) above to the Irons Law Firm ($595.00) and First Baptist Church of Wagoner ($330.00).

25.     After her termination, Ms. McConnell suffered a period of unemployment, which was inordinately stressful.  She eventually was re-employed but earns a salary much less than what she would have earned at Preferred Business Systems had she not been wrongfully terminated.  The economic impact of the wrongful termination will continue to impact Ms. McConnell.  Although she is re-employed, she has not been able, despite efforts that continued even after re-employment, to become re-employed in a sales position (which is her background) and has consequently not been able to earn as much, nor will she be able to earn as much, as she would otherwise but for the wrongful termination by Defendant.

26.     The harassment that Ms. McConnell endured has caused her great emotional distress and harm.

### CLAIMS FOR RELIEF

### First Claim for Relief

### Title VII – Sex Discrimination

27.     Plaintiff incorporates by reference paragraphs 1 through 26 of this Complaint.

28.     During her employment with Defendant, and because she is female, Plaintiff was subjected to unwelcome conduct, discussions, comments, and insinuations of a sexual nature which were sufficiently severe or pervasive to create a hostile work environment.

29.     The sexually harassing acts were carried out by two individuals: Alan Balcourt and Derek Schneider, who had and exercised supervisory authority over Plaintiff.

30.     Mr. Balcourt and/or Mr. Schneider took action to insure that adverse consequences resulted to Ms. McConnell when it became apparent that she would not be a willing participant to the harassment, through instructions to her not to further report the conduct and eventually through termination of her employment.

31.     As a direct and proximate result of the harassment inflicted upon Plaintiff because of her sex, Defendant has caused Plaintiff to suffer injuries and damages, including but not limited to, loss of earnings and benefits, mental anguish, physical and emotional distress, and loss of enjoyment of life.

32.     Defendant's actions toward Plaintiff were willful, wanton, and intentional evidencing a reckless disregard for the rights of Plaintiff thereby warranting the imposition of punitive damages.

33.     Plaintiff requests payment of her attorneys' fees and litigation expenses as provided by Title VII.

## Second Claim for Relief

### Title VII -- Retaliation/Termination

34.     Plaintiff incorporates by reference paragraphs 1 through 33 of this Complaint.

35.     Plaintiff took steps to attempt to report the harassing conduct of Mr. Balcourt and Mr. Schneider.  However, she was instructed not to proceed with these reports and implicitly threatened with her employment that she should "be careful" with what she said to others.

36.     Plaintiff further attempted to report the harassment contemporaneously with her termination.

37.     Defendant, through Mr. Schneider, terminated Plaintiff's employment in retaliation for her having engaged in protected activity under Title VII.

38.     Defendant, through Mr. Schneider, terminated Plaintiff's employment preemptively to prevent her from engaging in further protected activity under Title VII.

39.     As a direct and proximate result of the unlawful termination inflicted upon Plaintiff, Defendant has caused Plaintiff to suffer injuries and damages, including but not limited to, loss of earnings and benefits, mental anguish, physical and emotional distress, and loss of enjoyment of life.

40.     Defendant's actions in this regard toward Plaintiff were willful, wanton, and intentional evidencing a reckless disregard for the rights of Plaintiff thereby warranting the imposition of punitive damages.

### Third Claim for Relief

### Breach of Contract – Oklahoma Law

41.     Plaintiff incorporates by reference paragraphs 1 through 40 of this Complaint.

42.     Prior to becoming employed with Defendant, Plaintiff was informed about the terms of her proposed compensation, which would include salary, commission, and access through Defendant to programs offered by other companies affiliated with Defendant, such as Sharp®.

43.     The promise to pay Plaintiff these benefits was the basis of the agreement that Plaintiff would become employed by Defendant.

44.     During the course of her employment, Plaintiff earned certain funds in accordance with this agreement that have not been paid to her.  Those funds are detailed above in Paragraph 23 and are hereby incorporated by reference.

45.     Defendant has refused to pay these funds to Plaintiff, even though they were earned during the course of her employment and prior to her termination.

46.     Defendant's actions constitute a breach of contract.  Plaintiff has been damaged as a result of this breach of contract.

47.     Pursuant to 12 *Okla. Stat.* § 936, Plaintiff requests an award of her attorneys' fees and litigation expenses related to recovering funds due to her for services rendered.

### Fourth Claim for Relief

### Violation of Protection of Labor Act – Oklahoma Law

48.     Plaintiff incorporates by reference paragraphs 1 through 47 of this Complaint.

49.     Prior to becoming employed with Defendant, Plaintiff was informed about the terms of her proposed compensation, which would include salary, commission, and access through Defendant to programs offered by other companies affiliated with Defendant, such as Sharp®.

50.     The promise to pay Plaintiff these benefits was the basis of the agreement that Plaintiff would become employed by Defendant.

51.     During the course of her employment, Plaintiff earned certain funds in accordance with this agreement that have not been paid to her.  Those funds are detailed above in Paragraph 23 and are hereby incorporated by reference.

52.     Defendant has refused to pay these funds to Plaintiff, even though they were earned during the course of her employment and prior to her termination.

53.     Defendant's conduct is in violation of Protection of Labor provisions of 40 *Okla. Stat.* § 165.1 *et seq.*

54.     As a result of Defendant's conduct, Plaintiff has been damaged.

55.     Pursuant to 40 *Okla. Stat.* § 165.9, Plaintiff requests an award of her attorneys' fees and litigation expenses related to recovering funds due to her for under the Protection of Labor Act.

## PRAYERS FOR RELIEF

WHEREFORE Plaintiff J. McConnell, demands judgment against the Defendant Preferred Business Systems, LLC, as follows:

A.      Actual damages, including without limitation, backpay, lost past and future compensation, and lost past and future benefits in an amount to be determined at trial;

B.      Actual damages to compensate Plaintiff for the mental and physical injury and distress suffered as a result of the conduct of Defendant in an amount to be determined at trial;

C.      Punitive damages in an amount to be determined at trial;

D.      Her unlawfully withheld wages;

E.      An injunction prohibiting Preferred Business Systems, LLC from engaging in any further discriminatory or retaliatory conduct in violation of Title VII;

F.      Her attorneys' fees and costs expended in the prosecution of this action; and

G.      Other and further relief as may be deemed just and proper.

Respectfully submitted,

Adrienne L. Barnett, OBA #20155
NORMAN WOHLGEMUTH CHANDLER & JETER
401 South Boston Avenue
2900 Mid-Continent Tower
Tulsa, OK  74103-4023
(918) 583-7571
(918) 584-7846 (facsimile)
alb@nwcjlaw.com

**ATTORNEY FOR PLAINTIFF,
J. MCCONNELL**